UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br> Plaintiff, <br> v. <br> **HENRY CERVANTES, ET AL.**, <br> Defendants. | **Case No. 12-CR-00792-YGR-4** <br><br> **POST-TRIAL ORDER NO. 5 DENYING RULE 29 AND RULE 33 MOTION FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL FOR JAIME CERVANTES** <br><br> **RE: DKT. NO. 1475** |

Currently before the Court is defendant Jaime Cervantes's motion for judgment of acquittal and for a new trial, pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. (Dkt. No. 1475.) Specifically, defendant J. Cervantes moves on the jury's guilty verdicts as to the following counts: (i) Count Two for Conspiracy to Commit Murder in Aid of Racketeering, 18 U.S.C. section 1959(a)(5);[1] (ii) Count Seven for Conspiracy to Obstruct Justice, 18 U.S.C. section 371; (iii) Count Nine for Obstruction of Justice, 18 U.S.C. sections 1512(c)(2) and 2; (iv) Count Ten for Use of Fire to Commit Felony, 18 U.S.C. sections 844(h) and 2; (v) Count Eleven for Assault with a Dangerous Weapon in Aid of Racketeering as to Sean Dixon, 18 U.S.C. sections 1959(a)(3) and 2; (vi) Count Twelve for Assault with a Dangerous Weapon in Aid of Racketeering as to Larry Little, 18 U.S.C. sections 1959(a)(3) and 2; and (vii) Count Fifteen for Possession of a Firearm in Furtherance of a Crime of Violence, 18 U.S.C. sections 924(c) and 2.[2]

---

[1] With respect to this Count, defendant J. Cervantes incorporates by reference and renews his arguments made in his Rule 29 motion dated June 30, 2016, prior to the jury's verdict at Docket Number 1339. In response, the government incorporated by reference its opposition to such motion at Docket Number 1369.

[2] In the caption of defendant's motion, defendant included Count Eight but does not

Having carefully considered the papers submitted on this motion, and the record at trial, the Court **DENIES** defendant J. Cervantes's Rule 29 and Rule 33 motion for judgment of acquittal and for a new trial.

I. **LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 29, a court may set aside a guilty verdict and enter an acquittal. Fed. R. Crim. P. 29. "In ruling on a Rule 29 motion, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (quoting *United States v. Bahena-Cardenas*, 70 F.3d 1071, 1072–73 (9th Cir. 1995)) (emphasis in original). Additionally, the Court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977) (internal quotations and citations omitted).

Under Federal Rule of Criminal Procedure 33, upon the defendant's motion, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." In the Ninth Circuit, a motion for a new trial must be granted if an error, "in any reasonable likelihood, [could] have affected the judgment of the jury." *United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978). If the Court decides that the weight of the evidence "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (internal quotations and citation omitted).

II. **DISCUSSION**

    A. **Count Two: Conspiracy to Commit Murder in Aid of Racketeering**

Defendant J. Cervantes was charged in Count Two of conspiring to commit murder in aid

---

address such count in the motion itself. As defendant provides no discussion of Count Eight, the Court construes the same as a typographical error and does not address Count Eight here.

of racketeering. Specifically, the indictment alleged that from about September 27, 2004 to about September 2015, defendant agreed to "kill actual and suspected members of rival gangs, individuals suspected of cooperating with law enforcement, individuals who defied the will of *Nuestra Familia*, and others in order to maintain and increase their standing" in the enterprise. (Dkt. No. 1413, July 13, 2016 Trial Tr. 7960:2–8.) The Court instructed the jury on the elements of this count, namely that: (i) an enterprise existed starting on September 27, 2004; (ii) such enterprise engaged in racketeering activity; (iii) defendant knowingly and intentionally conspired to commit murder under California law;[3] and (iv) defendant's purpose in conspiring to commit murder was to gain entrance to, or to maintain, or to increase his position in, the enterprise. (*Id.* at Tr. 7959:19–7961:18.)

With regards to this Count, defendant raises no new arguments and only incorporates the arguments he raised in his prior Rule 29 motion. The Court previously denied such motion explaining that viewing the evidence in light most favorable to the prosecution, any rational trier of fact could find each of the essential elements of Count Two to have been proven beyond a reasonable doubt. (Dkt. Nos. 1339, 1397.) *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court thus only briefly addresses defendant's arguments as to this count here:

Defendant argues that a judgment of acquittal should be entered in his favor as to this count because the government failed to produce evidence sufficient to support a finding beyond a reasonable doubt that (i) defendant J. Cervantes conspired to commit murder under California law or (ii) any such conspiracy was for the purpose of gaining entrance to, or to maintain, or to

---

[3] In defendant J. Cervantes' prior Rule 29 motion and the government's opposition to such motion, the parties disputed whether the elements of conspiracy to commit murder under California law applied. To the extent defendant J. Cervantes is continuing to raise this argument, such argument is moot as the Court instructed the jury that with respect to Count Two, it must find that defendant J. Cervantes committed conspiracy to commit murder under California law. (Dkt. No. 1413, July 13, 2016 Trial Tr. 7959:19–7961:18.) With respect to conspiracy to commit murder under California law, the Court instructed the jury as to the elements as follows: (i) defendant intended to agree and did agree to commit murder; (ii) at the time of the agreement, defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit murder; (iii) one of the conspirators committed at least one of the overt acts to accomplish the murder; and (iv) at least one of the overt acts was committed in California. (*Id.* at Tr. 7937:23–7939:15.)

3

increase his position in, the enterprise.

With respect to both of defendants' grounds for a judgment of acquittal, the government presented substantial evidence regarding the code of conduct within *Nuestra Familia* and the training each member received, which included killing those who were placed on a "Bad News List," for, among other reasons, "deserting" *Nuestra Familia*. (*See, e.g.*, Dkt. No. 1225, May 25, 2016 Trial Tr. 3450:7–3451:8 (Ocampo).) The government also presented evidence that members of *Nuestra Familia* were expected to attack rival gang members on sight. (*See, e.g.*, *id.* at Tr. 3511:19–3512:21.) Additionally, the government submitted evidence of two specific instances in which defendant J. Cervantes agreed to commit murder or acted upon the general conspiracy to murder the enemies of *Nuestra Familia*: First, the testimony of Shane Bowman evidences that defendant J. Cervantes agreed with others to find and murder Sade Douglas, who was a witness to certain murders committed by another defendant in this case, under the orders of Alberto Larez, a high-ranking *Nuestra Familia* member. (Dkt. No. 1160, May 5, 2016 Trial Tr. 1351:5–14.) Second, Shane Bowman also testified about defendant J. Cervantes' attempted murder of Benjamin Aragon, who was a member of a rival gang. (*Id.* at Tr. 1377:10–1380:15.) From such evidence, the jury could have concluded that defendant J. Cervantes conspired to commit murder in aid of the racketeering enterprise.

Accordingly, the Court **DENIES** defendant J. Cervantes's motion for a judgment of acquittal and for a new trial as to Count Two.

### B. Counts Seven and Nine: Obstruction of Justice and Conspiracy to Obstruct Justice

Defendant J. Cervantes was charged for obstruction of justice and conspiracy to obstruct justice under 18 U.S.C section 1512(c)(2) for his involvement in burning the bodies of two murder victims in an apartment on Coolidge Avenue (the "Coolidge Murders"). Section 1512(c)(2) of Title 18 of the United States Code proscribes conduct that "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so." To prove obstruction of justice, a "'nexus' between the obstructive act and the proceeding" must be shown. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005) (citing *United States v. Aguilar*, 515 U.S. 593, 599–600 (1995)).

The term "official proceeding" means, among others, a "proceeding before a judge or court of the United States . . . or a Federal grand jury." 18 U.S.C. § 1515(a)(1). "[A]n official proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1). On this basis, the government argued at trial that defendant J. Cervantes was guilty of the crimes alleged in Counts Seven and Nine because his intent in burning the bodies of the Coolidge Murder victims was to obstruct a future grand jury proceeding. The jury presumably agreed and found defendant J. Cervantes guilty on both counts.

Defendant argues that the Court should enter a judgment of acquittal, or in the alternative grant him a new trial, as to Counts Seven and Nine because (1) the testimony of Shane Bowman upon which the conviction was based is not credible; and (2) in any event, the government failed to show a nexus between the allegedly obstructive acts and an official proceeding. The Court addresses each, in turn.

### 1. Reliability of Shane Bowman's Testimony

Defendant J. Cervantes argues that Shane Bowman, upon whose testimony defendant was convicted of Counts Seven and Nine, was unambiguously impeached at trial, casting doubt on defendant's guilty verdicts as to these counts. The Court disagrees.

At trial, Bowman testified to the following facts related to defendant's involvement in covering up the Coolidge Murders:[4]

> We got out of the vehicle, we, me and [Jaime Cervantes] Hennessey, and we went inside the apartment. And then when we went inside the apartment. We located the first body. That was . . . That was a female subject. And . . . and I poured gas on her and then we left to locate the other individual, which was a male subject in a . . . in a bedroom next to the door.
> It was dark in the room. So I turned on the light. When I turned on the light, we located the individual lying on the bed. He had some trauma to his head. He got hit. He's lying face up.
> Jaime . . . Jaime poured gas on that body. As he was pouring gas on that body, I returned to where the female was and I lit the female on fire, female body. When I lit the subject on fire, the door slammed shut. It was . . . it was like a

---

[4] Defendant H. Cervantes was charged with committing the Coolidge Murders in aid of racketeering in Counts Five and Six. The jury was undecided as to both counts, and similarly was undecided as to Count Eight, which charged defendant J. Cervantes as an accessory after the fact to the same murders. (Dkt. No. 1433 at 8–10.)

5

> combustion. Crazy.
> And when that was done, I went to [Jaime] and said we need to get out of here.
> He said, we ain't going nowhere, we got to do this one, too, meaning light the body on fire.
> So [Jaime] lit the male subject on fire. The same effect didn't happen. The guy went up in flames.
> And then we left. We left outside of the apartment. We returned to the vehicle, and got dropped off at the apartments on Seminary.

(Dkt. No. 1159, May 4, 2016 Trial Tr. 1315:22–1316:19.)

Defendant contends that such testimony should not be credited because Bowman demonstrably lied to the jury regarding who set the fires. Specifically, defendant highlights Bowman's testimony in a trial in 2014 before another district judge about the same incident:

> Q: Mr. Bowman, do you recall in your testimony, and this was to the U.S. Attorney before Judge Illston, that you stated that—the question was: What was your part in cleaning up? And you said, Answer: I poured gasoline on the body and set it on fire. Do you recall that?
> A: Yes.
> Q: And then later, just a few moments later, you were asked a question. Question: You threw it at the bodies? Answer: Threw it at the body. The one subject was in one room, another subject was in another room. The subject I lit on fire was a female. When I lit her on fire, the whole room went up in flames, doors slammed in my face, the window blew out. And then after that that subject in the other room, which was the male subject, was not lit on fire yet. I lit that subject on fire. Do you recall that testimony?
> A: No.

(Dkt. No. 1180, May 10, 2016 Trial Tr. 1625:7–25.) In the instant trial, defendant argues that Bowman conceded that he admitted making the quoted statements during the 2014 trial. (*Id.* at 1627:13–15 (Q: So you admitted to that [2014] jury that you had set fire to both bodies? A: That's what I stated, yes.).) During the cross-examination, Bowman attempted to clarify what appeared to be inconsistencies between the testimony at the two trials: Thus, Bowman explained:

> Q: Do you recall that during your testimony under oath before Judge Illston you said that you had set on fire and burned both the man and the woman in the apartment building on Coolidge?
> A: I believe that is what was stated. I don't think I implied that I burnt the man on fire. I think—I believe I implied that I burnt the woman on fire. Like you said, it said that I said that. So that's what it said.

(Dkt. No. 1180, May 10, 2016 Trial Tr. 1626:23–1627:5.) Contrary to the defendant's contention

that the inconsistency created reasonable doubt on Counts Seven and Nine,[5] the Court agrees that the references were, in reality, not so stark. The explanation lay in (i) the difference between a cold record and the lack of a showing of intonation and emphasis and (ii) a witness who understood that he could not credibly contradict a transcript. Thus, as became apparent during redirect, Bowman explained that during Judge Illston's trial, he corrected the examiner emphasizing that he set only a single body on fire:

> Q: You threw it at the **bodies**?
> A: I threw it at the **body**. . . . I lit **that** subject on fire.

(Dkt. No. 1180, May 10, 2016 Trial Tr. 1625:16–23) (emphasis supplied). Without the emphasis, the meaning alters when displayed on a transcript.[6] Further, the testimony before Judge Illston was a passing discussion of the incident, which did not flesh out any specifics. Rather than discredit his testimony, Bowman's immediate adoption of his prior testimony strengthened his testimony in the instant trial. As referenced, defense counsel did an excellent job on the cross-examination, but it was short-lived as the rehabilitation more than explained the issue. In that context, the jury could have reasonably believed Bowman.[7]

Given the record, the Court does not find that Bowman's testimony qualifies as support for

---

[5] *See United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985) (stating that courts have granted new trial motions based on the weight of the evidence "only where the credibility of the government's witnesses had been impeached and the government's case had been marked by uncertainties and discrepancies") (citing *United States v. Simms*, 508 F. Supp. 1188, 1204–08 (W.D. La. 1980) (granting new trial where there was no direct proof of defendant's guilt and government's case depended upon inferences drawn from uncorroborated testimony) and *United States v. Hurley*, 281 F. Supp. 443, 449 (D. Conn. 1968) (granting new trial where testimony of key witnesses was subject to serious impeachment)).

[6] Often in trial, attorneys will ask questions from which the lack of intonation will create ambiguities in a transcript. Thus: "Lawyer: So she didn't call you? Witness: No." Frequently, the "no" communicated in the courtroom reflects an *agreement* with the lawyer, as in: "'No.' That is correct. She did not call." Yet, the transcript reflects disagreement.

[7] Further, even if, as defendant J. Cervantes argues, Bowman physically set both fires, the jury still could have found that defendant J. Cervantes aided and abetted Bowman in the completion of such acts. That defendant did not himself set the fires would not necessarily absolve him of liability under Counts Seven and Nine. The government offered evidence demonstrating that defendant participated in the crime such that defendant would be guilty of aiding and abetting even if he did not personally set the fires. (*See* Dkt. No. 1159, May 4, 2016 Trial Tr. 1308:2–22, 1309:22–1310:4, 1315:22–1316:19.)

7

the proposition that this is an "exceptional case in which the evidence preponderates heavily against the verdict" or that a new trial would be warranted on this ground. *United States v. Showalter*, 569 F.3d 1150, 1157 (9th Cir. 2009); *see also Rojas*, 554 F.2d at 943 (holding that determining the credibility of witnesses and resolving evidentiary conflicts is within the exclusive function of the jury). Accordingly, the Court **DENIES** the request for a judgment of acquittal and the motion for a new trial.

### 2. Nexus Between Obstructive Act and Official Proceeding

To prove obstruction of justice, the government must demonstrate that a nexus exists between the obstructive act—here setting fire to the bodies—and an official proceeding—in this case, a future grand jury investigation. *See Arthur Andersen LLP*, 544 U.S. at 708; 18 U.S.C. § 1515(a)(1). "[A]n official proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1). The question is whether a defendant "contemplated or foresaw an official proceeding." *United States v. Brimager*, No. 13-CR-2381-JM, 2014 WL 1515867, at *5 (S.D. Cal. Apr. 17, 2014); *see Arthur Andersen*, 544 U.S. at 708 (stating that although the official proceeding need not be pending or about to be instituted, it is "quite another [thing] to say a proceeding need not even be foreseen"). Additionally, the government is not required to show that the defendant knew or contemplated that such official proceeding would be a federal proceeding, as opposed to a state one. 18 U.S.C. § 1512(g); *see also United States v. Ahrensfield*, 698 F.3d 1310, 1324 (10th Cir. 2012).[8]

Defendant J. Cervantes argues that the government failed to provide sufficient evidence that defendant J. Cervantes had the requisite knowledge for liability under Counts Seven and Nine. The Court does not find that the evidence in this regard was insufficient, such that the Court should grant defendant's motion for a judgment of acquittal or for a new trial. The jury could

---

[8] With respect to this count, the Court instructed the jury in the following manner: "The government must show a nexus between the obstructive act and the official proceeding. In other words, the government must show that the defendant had knowledge that his actions were likely to affect the official proceeding in order to have the requisite intent to obstruct. . . . You are instructed that a federal grand jury proceeding is an official proceeding." (Dkt. No. 1413, July 13, 2016 Trial Tr. 7953:14–22.)

8

have found the fact that defendant and Shane Bowman were ordered to burn two bodies at a double-murder crime scene sufficient to infer that defendant performed such acts to obstruct a future grand jury proceeding, preventing the grand jury from issuing an indictment. (Dkt. No. 1159, May 4, 2016 Trial Tr. 1308:2–22 (Bowman testimony that he, defendant J. Cervantes and others met with H. Cervantes); *id.* at 1309:22–1310:4 (Bowman testimony that he and defendant J. Cervantes were instructed to burn the two bodies and the apartment).) Additionally, the jury could have credited Bowman's testimony of defendant's participation in the burning of the bodies as further evidence of his intent to destroy potential evidence in a future proceeding:

> And then when that was done, I went to [Jaime Cervantes] and said we need to get out of here. He said, we ain't going nowhere, we got this one, too, meaning light the body on fire. So [Jaime Cervantes] lit the male subject on fire. The same effect didn't happen. The guy went up in flames.

(*Id.* at 1316:12–1316:16.) Based on the testimony and the nature of the act—i.e., burning the bodies of two murder victims—the Court finds that the jury had sufficient evidence from which to conclude that defendant J. Cervantes knew or foresaw that the natural and probable result of his actions were to obstruct a future grand jury proceeding.[9]

Accordingly, the Court **DENIES** defendant J. Cervantes' request for a judgment of acquittal, or in the alternative, a new trial, with respect to the jury's guilty verdict as to Counts Seven and Nine.[10]

---

[9] The cases cited by defendant J. Cervantes are distinguishable. *See United States v. Friske*, 640 F.3d 1288, 1292–93 (11th Cir. 2011) (holding there was no evidence from which a jury could conclude that defendant was obtaining objects he knew or could foresee were subject to forfeiture proceedings ad noting that the "government had to prove beyond a reasonable doubt that [defendant] knew that the natural and probable result of his actions would be the obstruction of [the] forfeiture proceeding"); *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013) (holding that an FBI investigation is not an official proceeding under the obstruction statute); *United States v. Aguilar*, 515 U.S. 593, 601 (1995) (holding that false statements made to an FBI investigator even where a grand jury investigation is pending did not fall under the obstruction statute unless defendant knew such false statements would be provided to the grand jury).

[10] Specific to Count Seven, defendant further argues that the Court should grant acquittal or a new trial because the government failed to present evidence that defendant had knowledge of any particular official proceeding and thus lacked the specific intent to form a conspiracy to obstruct the same. However, as discussed above, the government need not demonstrate that defendant knew of a specific official proceeding, only that defendant foresaw that his obstructive acts could impede an official proceeding. As previously discussed, the Court finds that the government has submitted evidence sufficient for a jury to find that defendant J. Cervantes had the requisite state of mind to find him guilty of this count.

### C. Count Ten: Use of Fire in Felony

Defendant J. Cervantes was charged in Count Ten of use of fire to commit a felony, and aiding and abetting such use of fire, in violation of 18 U.S.C. sections 844(h) and 2. The Court instructed the jury that to find defendant guilty of Count Ten, it must first find defendant guilty of the crimes alleged in Counts Seven, Eight, or Nine. (Dkt. No. 1413, July 13, 2016 Trial Tr. 7972:24–7973:3.) Defendant argues that the jury did not find him guilty of the crime alleged in Count Eight, and that the evidence upon which he was convicted of the crimes alleged in Counts Seven and Nine was insufficient. For the same reasons that the Court finds that defendant's convictions under Counts Seven and Nine were supported sufficiently by the evidence on the record, the Court finds that defendant's guilty verdict as to Count Ten should also stand. Accordingly, the Court **DENIES** defendant J. Cervantes's motion for a judgment of acquittal, or in the alternative, a new trial, with respect to the jury's guilty verdict as to Count Ten.

### D. Counts Eleven and Twelve: Assault with a Dangerous Weapon in Aid of Racketeering

In Counts Eleven and Twelve, defendant J. Cervantes was charged with assault with a dangerous weapon in aid of racketeering of Sean Dixon and Larry Little, respectively. The Court instructed the jury as to the elements of such crime, namely that: (i) an enterprise existed; (ii) the enterprise engaged in racketeering activity; (iii) the defendant committed an assault with a dangerous weapon; and (iv) the defendant's purpose in committing the assault was to "gain entrance to, or to maintain or to increase his position in, the enterprise." (Dkt. No. 1413, July 13, 2016 Trial Tr. 7974:4–12.) With regards to the fourth element, the Court explained that it was "not necessary for the government to prove that [such] motive was the sole purpose, or even the primary purpose" but that the jury needed to find either that such was a "substantial purpose of the defendant or that he committed the charged crime as an integral aspect of membership in the enterprise." (*Id.* at Tr. 7961:7–13.)

Defendant does not appear to argue that the Court improperly instructed the jury, but, rather, that the evidence presented by the government was not sufficient to show that defendant J.

Cervantes committed such acts for the unlawful purpose proscribed by the statute.[11] Specifically, defendant argues that the robbery at Livermore, at which the assaults on Dixon and Little occurred, was a personally motivated robbery organized by Fernando Rangel, and another individual, Donna Mar. (*See* Dkt. No. 1238, June 1, 2016 Trial Tr. 3936:4–5 ("Q: What was the objective of the robbery? [RANGEL]: To make some money and . . . that's it, make some money.").) Defendant J. Cervantes further argues that there was no evidence that the robbery was sanctioned by a high-ranking official of *Neustra Familia*, that such robbery was committed either to protect the enterprise's operations or advance its objectives, or that the targets of the robbery posed any threat to the enterprise.

In response, the government cites testimony from several witnesses in which the witnesses indicated that members of *Nuestra Familia* were expected to commit crimes, including robbery, and that such members were then expected to provide a portion of the proceeds from any such crimes to the enterprise. (*See, e.g.*, Dkt. No. 1160, May 5, 2016 Trial Tr. 1401:1–5 ("Q: What were the ways that you understood that norteños would make money? [BOWMAN]: You have

---

[11] Defendant J. Cervantes further argues that the Court should find Rangel's and Bowman's testimony in this regard so incredible that they cannot form the bases upon which the verdicts as to these counts are sustained. The Court has already addressed Bowman's testimony above, and finds defendant's arguments as to Bowman equally unpersuasive in this context. With respect to Rangel, defendant highlights the following cross-examination to argue that Rangel's testimony on any matter should not be believed:

Q: Let me ask you then, is it true that the first time you talked to them about the home invasion robbery, you said the following statement: "I did not intend to fire the .357 handgun at Sean. It was accidental." Did you say that?
A: Yeah.
Q: That was a lie, wasn't it?
A: In my mind and my heart, no. In my actions, yeah, it was a lie—

(Dkt. No. 1257, June 2, 2016 Trial Tr. 4101:4–13.) Defendant cites *United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005) in support of his argument that such impeachment is sufficient to find the testimony so unbelievable that a new trial is warranted. However, in that case, the Second Circuit held that the district court did not abuse its discretion in granting a new trial where the witness was "seriously impeached" numerous times, including by evidence that he told the police twice before that he did not know the identity of his assailant. *Id.* Here, the testimony defendant highlights as "seriously impeaching" Rangel is ambiguous, at best. The jury was instructed that it could believe all, none, or some of any witness's testimony. Even if Rangel was not the most believable witness, the testimony corroborated that of Bowman and was certainly sufficient such that a judgment of acquittal or a new trial would not be inappropriate.

11

money-making schemes. You sell narcotic, drugs. You sell what you can sell. Robberies, money-making schemes, things of that nature."); Dkt. No. 1238, June 1, 2016 Trial Tr. 3842:22–25 ("[RANGEL]: We—when I signed up for this, I knew that my involvement would be nothing but criminal activity, where there is extortion, robberies, drugs, assaults, all of the above."); Dkt. No. 1225, May 25, 2016 Trial Tr. 3464:4–11 ("[OCAMPO]: Whatever you're skilled at. I was good at selling drugs, so that's basically what my role was. . . . If you are good at robberies, we put you in robberies, home invasions. It just goes on. Q: As a member of NR, were—was it expected that you would do things—put in work outside of the prison life? A: Yes."). Specifically, with respect to the Livermore robbery, Rangel testified thus:

> Q: Was there also some discussion about how the proceeds would be divided?
> A: Yeah.
> Q: What was your understanding as to how they would be divided?
> A: They would be divided four ways, predominantly four ways. Me, Huero [Bowman], Hennessey [Jaime Cervantes], and Bird [Alberto Larez].
> . . .
> Q: Why were you going to give some of it to Bird if he wasn't involved in the actual robbery?
> A: Because that's the authority. That was the authority in our life at the time. That was my channel.

(Dkt. No. 1238, June 1, 2016 Trial Tr. 3938:11–24.)

In light of the testimony and evidence on the record, the Court does not find that the evidence was insufficient for the jury to find defendant J. Cervantes guilty of Counts Eleven and Twelve. Accordingly, the Court **DENIES** defendant's motion for a judgment of acquittal or for a new trial as to these counts.

### E. Count Fifteen: Possession of a Firearm in Furtherance of a Crime of Violence

Defendant J. Cervantes is charged in Count Fifteen with possession of a firearm, or aiding and abetting possession of a firearm, in furtherance of a crime of violence related to the Livermore robbery in Counts Eleven and Twelve. The government appears to concede that defendant J. Cervantes's liability on this count is limited to aiding and abetting liability. (Dkt. No. 1489 at 23.) Thus, the central issue is whether the government demonstrated that defendant had the requisite advance knowledge that a firearm would be used, which is required to show aiding and abetting

liability for this crime. *See Rosemond v. United States*, 134 S. Ct. 1240, 1249 (2014) (holding that defendant's knowledge of a firearm must be "advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice").

Defendant argues that the evidence demonstrates that he did not know about the presence of a handgun until they arrived at the scene of the crime, immediately before entering the residence. Rangel's testimony on this issue is as follows:

> Q: So let's just picture this. You take the gun from Shane [Bowman] when? Before you get there? In the car? When you step out? When did you take it?
> A: I got it from him before we got out of the car.
> Q: At the location?
> A: Yeah.

(Dkt. No. 1269, June 6, 2016 Trial Tr. 4294:10–15.) Additionally, Rangel further testified that there was no plan to use the firearm to shoot anyone during the commission of the robbery. (*Id.* at 4293:18–25.)

However, even if that were so, defendant does not explain why knowledge of the firearm prior to them entering the residence to commit the robbery is insufficient under *Rosemond* for aiding and abetting liability. In *Rosemond*, the Supreme Court held that the jury instructions were improper because they allowed the jury to convict the defendant even if he "first learned of the gun when it was fired and he took no further action to advance the crime." *Rosemond*, 134 S. Ct. at 1251–52. Here, the Court specifically instructed the jury that it must find that defendant J. Cervantes had "advance knowledge that an accomplice would display or make the presence of a firearm known for purposes of intimidation" and that this "requirement is satisfied if the defendant knew that an accomplice intended to brandish a firearm to intimidate if the need arose." (Dkt. No. 1413, July 13, 2016 Trial Tr. 7980:15–22.) The evidence demonstrated that, at the very latest, defendant J. Cervantes was aware of the presence of the gun prior to exiting the vehicle. At that point, defendant J. Cervantes did not withdraw from the robbery but, rather, continued to participate in the crime after the gun was displayed. Such is sufficient to support a finding of guilt as to this count. *See Rosemond*, 134 S. Ct. at 1250 n.9 ("Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge.").

13

Accordingly, the Court **DENIES** defendant J. Cervantes's motion for a judgment of acquittal or for a new trial as to Count Fifteen.

### III. CONCLUSION

The Court **DENIES** defendant J. Cervantes's motion for a judgment of acquittal or for a new trial as to all counts challenged pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively.

This Order terminates Docket Number 1475.

**IT IS SO ORDERED.**

Dated: November 8, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**